In re Jerry D. BAYDUSH, Debtor.

Alexander P. SMITH, Trustee,
Plaintiff/Appellant/Cross–
Appellee,

v.

Jerry D. BAYDUSH, Nationsbank, N.A.,
Defendants/Appellees/Cross–
Appellants.

No. 2:94cv480.

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 15, 1994.

Alexander P. Smith, Sheryl Lee Brindle, Alexander P. Smith & Associates, P.C., Norfolk, VA, for plaintiff/appellant/cross-appellee.

Peter S. Lake, Heilig, McKenry, Fraim & Lollar, Norfolk, VA, for defendants/appellees/cross-appellants.

## OPINION

REBECCA BEACH SMITH, District Judge.

This matter comes before the court pursuant to 28 U.S.C. § 158(a) on appeal from the order and memorandum opinion of the United States Bankruptcy Court for the Eastern District of Virginia, entered April 11, 1994. In its memorandum opinion, the bankruptcy court held that the $500,000.00 limit on spendthrift trusts, established by Virginia Code section 55–19, applies to each beneficiary's trust estate and not to the trust corpus in its entirety. Also at issue in this appeal is the bankruptcy court's ruling that Jerry D. Baydush's contingent remainder interest in two trusts created by the wills of his grandparents is an asset of the bankruptcy estate. After due consideration, and for the reasons articulated below, this court AFFIRMS, in part, and REVERSES, in part, the bankruptcy court's order of April 11, 1994.

### I. Factual and Procedural History

Debtor Jerry D. Baydush ("Debtor") filed a voluntary Chapter 7 petition in bankruptcy on May 10, 1993. Alexander P. Smith ("Bankruptcy Trustee"), the Plaintiff/Appellant in this proceeding, was appointed trustee of the Debtor's bankruptcy estate.

Debtor is a beneficiary of two identical testamentary trusts created by the wills of his grandparents, Boris Baydush and Annie Baydush. Each trust was created as a

spendthrift trust.[1] Under the terms of the trusts, each of the two sons of Boris and Annie Baydush, Leo and Junius, are to receive one-third of the income from each trust. The remaining one-third income interest is divided between the issue of Leo, who collectively receive a one-sixth interest, and the issue of Junius, who collectively receive the remaining one-sixth interest. Debtor, as a grandson sharing with two siblings, has a one-third interest in the one-sixth interest of Leo's issue. Thus, Debtor possesses a one-eighteenth interest in the income from each trust.

If either son dies leaving a wife surviving, his widow receives his share until her death. Both trusts will terminate when (1) Leo S. Baydush, Junius B. Baydush, Ida A. Baydush, and Marian C. Baydush have all died and (2) all the grandchildren living at the time of each testator's death have either died or reached the age of 25. Upon the happening of these two events, the remaining corpus in the spendthrift trusts will be distributed to the issue of both sons.[2] Only the second condition to the vesting of Debtor's interest in the two trusts has occurred. Leo S. Baydush, Ida A. Baydush, and Marian C. Baydush are all still alive. Were the trusts to terminate at the present time, Debtor would be entitled to one-sixth of the trust principal.

As of June 30, 1993, the principal of Annie Baydush's trust was estimated at $1,345,296.73 and that of Boris Baydush's trust at $2,784,017.55. Pursuant to § 55–19 of the Code of Virginia, Debtor exempted his entire income interest and his future interest in the principal of the trusts from the bankruptcy estate. Section 55–19 authorizes the creation of a spendthrift trust and provides that any trust estate not exceeding $500,000.00 may

be protected from creditors of the beneficiaries.

After hearing the evidence presented at trial on January 13, 1994, and after reviewing the applicable law, the bankruptcy court held that Debtor's future interest in the principal of the two trusts is a contingent remainder and is property of the bankruptcy estate. Mem. Op. at 7 (Apr. 8, 1994). Concluding that the $500,000.00 statutory limit on the amount of principal protected applied to each beneficiary's share, the bankruptcy court held that the income from the trust is not an asset of the bankruptcy estate. *Id.* at 10.

On April 21, 1994, Debtor submitted a motion to reconsider, amend the judgment, and make additional findings. The bankruptcy court denied the motion by order entered April 26, 1994. Also on April 21, 1994, the Bankruptcy Trustee filed a notice of appeal from that portion of the bankruptcy court's opinion finding that the $500,000.00 statutory cap applies to each beneficiary and not to the entire trust corpus. Debtor and Nationsbank, N.A. (the "Testamentary Trustee") filed an amended notice of cross-appeal on April 29, 1994, disputing the bankruptcy court's finding that Debtor's contingent remainder interest is an asset of the bankruptcy estate. Both parties having filed legal memoranda on the issues, the appeal is ripe for decision by this court.[3]

## II. Analysis

### A. The Contingent Remainder

■ In its memorandum opinion, the bankruptcy court held that Debtor's contingent remainder interest in the two trusts established by his grandparents is property

---

1. Specifically, each trust contains the following clause:

    I direct that the interest of any trust beneficiary, to the extent permitted by law, shall be held and possessed by the Trustee in trust upon the condition that it may be paid over by the Trustee to such beneficiary for such beneficiary's support and maintenance, or may be applied by the Trustee to such beneficiary's support and maintenance, and that said interest shall not be subject to such beneficiary's liabilities, or to alienation, assignment or anticipation by such beneficiary.

2. Should any grandchild die before the termination of the trust, his issue take his share directly from their great grandparents. In other words, if Debtor dies before the trust terminates, any his children will take; Debtor has no right to dispose of the interest by will and it does not pass through his estate.

3. Because all the issues on appeal involve matters of law fully covered by the record and authorities already before the court, the court does not find that oral argument would aid in the decisional process.

of the bankruptcy estate.[4] The court based its opinion on the facts that (1) the contingent remainder was an equitable interest existing at the time that Debtor filed for bankruptcy, and (2) a contingent remainder is a transferable interest under Virginia law. Noting that, in Virginia, a contingent remainder may be disposed of by deed or will, the court distinguished a Georgia case, which held that such an interest is not a part of the bankruptcy estate. *See In re Hicks,* 22 B.R. 243, 245 (Bankr.N.D.Ga.1982) (holding that, because a contingent remainder is non-transferable under Georgia law, it is not subject to the claim of the trustee in bankruptcy as property of the estate).

■ However, the bankruptcy court failed to incorporate the spendthrift nature of the Baydush trusts into its distinction of the *Hicks* case and into its conclusion. Spendthrift trusts, by their very terms, place limits on the transferability of interests created under them. In fact, the trusts at issue in the case *sub judice* state that the "interest of any trust beneficiary, to the extent permitted by law, ... shall not be subject to such beneficiary's liabilities, *or to alienation, assignment or anticipation by such beneficiary.*" (emphasis added).

In his motion to reconsider, Debtor argued, relying upon 11 U.S.C. § 541(c)(2), that the spendthrift provisions of the trust effectively rendered the contingent remainder nontransferable. This section of the Bankruptcy Code states: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). Thus, argued Debtor, section 541(c)(2) applies and his beneficial interest in the trust is not property of the estate. However, citing the provision governing termination of the trusts,[5] the bankruptcy court concluded that "the debtor's contingent remainder is free of trust" and "the spendthrift provisions of the

trust instrument do not apply to the contingent remainder." Order at 1 (Apr. 26, 1994).

The bankruptcy court apparently based its conclusion on a case from the Central District of Illinois, *In re Newman,* in which the court held "[t]he spendthrift provisions at issue here are not applicable to the distribution of the corpus after the termination of the trust. Therefore, Sec. 541(c)(2) does not prevent this property interest from becoming property of the estate." 88 B.R. 191, 193 (Bankr.C.D.Ill.1987). However, on appeal by the debtor, the district court overruled the bankruptcy court's opinion in that case. *Newman v. Magill,* 99 B.R. 881, 882–83 (C.D.Ill.1989), *aff'd sub nom. In re Newman,* 903 F.2d 1150, 1152–53 (7th Cir.1990).

In *Newman v. Magill,* the district court reviewed the spendthrift provisions contained in the trust instrument and determined that the settlor intended the spendthrift provisions to apply equally to the income and corpus of the trust. 99 B.R. at 883. It then addressed the trustee's argument that, because the debtor was to receive the corpus free of trust when he reached age 50, his contingent remainder interest was not governed by the spendthrift provisions of the trust. *Id.* As the court stated,

[t]he fact that [the termination provision] states that the corpus is to be delivered absolutely and free from trust merely signifies the termination of the trust once the trust's purpose is completed. That language cannot possibly have meant to serve to vitiate the detailed and explicit language of [the trust's] spendthrift provisions on income and corpus.

*Id.* at 883. Thus, "[t]he only reasonable conclusion is that the spendthrift provision, as well as the entire trust instrument, is valid until the Debtor reaches the age of 50. Only then does the Debtor acquire an interest in the corpus distribution." *Id.* at 884; *see In re Hannegan,* 155 B.R. 209, 213 (Bankr. E.D.Mo.1993) (holding that section 541(c)(2) of the Bankruptcy Code excluded the debt-

---

4. The parties do not dispute the bankruptcy court's finding that Debtor's future interest in the corpus of the two trusts is a contingent remainder. Similarly, the parties have stipulated that the Debtor has no right to compel the testamentary trustee to pay income or principal. Hence,

the Bankruptcy Trustee may not seek relief from the assets of the trusts.

5. *See supra* at 955–56 and note 2, for a synopsis of the termination provisions of the two trusts.

or's contingent remainder from inclusion in his bankruptcy estate because it was governed by spendthrift provisions of a will); *In re Wax,* 147 B.R. 205, 207 (Bankr.D.S.D. 1992) (debtor's contingent remainder interest is excluded from the bankruptcy estate under a spendthrift trust provision, pursuant to 11 U.S.C. § 541(c)(2)).[6]

As support for his position, the Bankruptcy Trustee offered *In re Strasma,* 26 B.R. 449 (Bankr.W.D.Wis.1983), in which the court concluded that the debtor's contingent remainder interest in a spendthrift trust did comprise part of the bankruptcy estate. The *Strasma* court did not explain how it reached such a decision, and it also failed to consider the particular language of the trusts or state law provisions. *Hannegan,* 155 B.R. at 213. Those considerations may have affected the transferable nature of the interests. *Id.* In addition, the conclusion of the *Strasma* court seems to contradict the language of section 541(c)(2), which excludes nontransferable interests from the bankruptcy estate.

▮ In the case at bar, the trust instruments state that any interest held by a beneficiary of the trust may not, *to the extent permitted by law,* be alienated or assigned by said beneficiary. Virginia Code section 55–19 permits a $500,000.00 trust estate to be held in trust upon condition that the trust *corpus and income* not be subject to the beneficiaries' liabilities or to alienation by them. Thus, the language of the trust instruments, set forth in the wills of Boris and Annie Baydush, clearly reveals an intent to protect both the income and the corpus of the trust. *See Thomas v. House,* 145 Va. 742, 745–46, 134 S.E. 673, 674 (1926) (noting that, in the construction of wills, the object is to ascertain the meaning of the testator from the language of the will and surrounding circumstances).

▮ At the present time, Debtor owns only a contingent remainder interest in the corpus of the two trusts. This interest is subject to the spendthrift provisions of the trusts and is, therefore, nontransferable. Hence, section 541(c)(2) prevents its inclusion in the bankruptcy estate. The fact that Debtor may, at some future date, receive distributions of corpus free of trust does not render the interest he presently holds free from the spendthrift provisions of the trusts. As the court noted in *Newman v. Magill,* the fact that the corpus is to be delivered free from trust, once the trusts' purposes are completed, does not nullify the detailed language of the spendthrift provisions. 99 B.R. at 883. To hold otherwise would be to thwart the intent of the trust settlors.

▮ Moreover, as Debtor and Testamentary Trustee persuasively argue, to subject this Chapter 7 Debtor to a continuing and indefinite obligation to the Bankruptcy Trustee would controvert the principle of providing a debtor with a fresh start inherent in the Bankruptcy Code. *See In re Brannan,* 40 B.R. 20, 25 (Bankr.N.D.Ga.1984). Regarding policy of the Bankruptcy Code, the Bankruptcy Trustee has asserted that section 541(a)(5) prevents a debtor from receiving a windfall by timing his filing of a bankruptcy petition. Such a policy underlying section 541(a)(5) does not apply to this case. For this Debtor, the 180 day period has already passed, and Debtor has not reaped benefits from the providential filing of his application. Instead, excluding the contingent interest under section 541(c)(2) will give the Debtor a fresh start. Absent such exclusion, the Debtor would be subject to the undue burden of attachment of his property for an indefinite period of time in contravention of this principle.

Thus, this court's decision that Debtor's contingent remainder interest in the princi-

---

6. *See Horsley v. Maher,* 89 B.R. 51, 53 (D.S.D. 1988) (reaching a similar conclusion applying section 541(a)(5)(A)). The court in *Horsley,* held that:

> because [the contingency had not yet occurred] when Horsley filed her bankruptcy petition and for the following 180 days, Horsley had not acquired a present interest in the trust assets and the spendthrift provision remained

applicable to prevent a transfer of her future interest. As the contingent remainder was non-transferable due to the operation of the spendthrift provision when the petition was filed and for the following 180 days, it is not includable [sic] in Horsley's bankruptcy estate under 11 U.S.C. § 541(a)(1) or under 11 U.S.C. § 541(a)(5)(A).

*Id.*

pal of the trusts is not an asset of the bankruptcy estate comports with the public policy behind the law of bankruptcy. For the foregoing reasons, this court REVERSES the bankruptcy court's finding that Debtor's contingent remainder interest in the corpus of the trusts established by his grandparents' wills is property of the bankruptcy estate.

## B. The $500,000.00 Spendthrift Cap

■ Section 55–19 of the Virginia Code authorizes the creation of spendthrift trusts. However, that section also places a limit on the amount of money which may be held in a trust estate and remain protected by the spendthrift provision.[7] In its memorandum opinion, the bankruptcy court held that the $500,000.00 limit applied to each beneficiary and not to the trust corpus as a whole. In other words, in the bankruptcy court's opinion, the words "trust estate" in the statute refer to the estate of each beneficiary. On appeal, the Bankruptcy Trustee contends that the "trust estate" refers to the corpus of the entire trust, regardless of the number of beneficiaries.

■ No Virginia court has confronted this issue and, apparently, no other state has a similar statutory provision on the books. Thus, this court must look to the language of the statute and to the legislative intent giving rise to its enactment. See City of Virginia Beach v. Board of Supervisors, 246 Va. 233, 236, 435 S.E.2d 382, 384 (1993) (when statute is ambiguous, court's primary objective is to determine the legislative intent in the use of the ambiguous term). In addition, "[t]he purpose for which a statute is enacted is of primary importance in its interpretation or construction." Norfolk S. Ry. v. Lassiter, 193 Va. 360, 364, 68 S.E.2d 641, 643 (1952). The language of Virginia Code section 55–19 conditions the $500,000.00 protection for the trust estate on the trustee's making payments from the trust "for the benefit of the beneficiaries." This language does not reveal whether the $500,000.00 protection applies to the interest of each beneficiary or to the collective interests of the beneficiaries.

■ Nothing in the Bankruptcy Trustee's argument persuades the court that the monetary limit should apply to the entire trust corpus. The Bankruptcy Trustee argues that the Restatement of Trusts states that "[w]hen it is desired to refer to the trust property as a whole, the term 'trust estate' is used." Restatement (Second) of Trusts § 3 (1959). However, Black's Law Dictionary 1513 (6th ed. 1990), defines a trust estate as "either the estate of the trustee—that is, the legal title,—or the estate of the beneficiary, or the corpus of the property which is the subject of the trust." Although it is true that "words in a statute are to be construed according to their ordinary meaning," Grant v. Commonwealth, 223 Va. 680, 684, 292 S.E.2d 348, 350 (1982), in this case, the ordinary meaning of the term "trust estate" is ambiguous. Hence, this court must look beyond the language of the statute to determine the meaning of the term.

■ In Sheridan v. Krause, 161 Va. 873, 172 S.E. 508 (1934), the Virginia Supreme Court reviewed the legislative intent behind the enactment of section 5157 of the Virginia Code, the predecessor to current section 55–19.[8] According to the court, the General Assembly was not satisfied with a public policy that made it impossible for a testator to provide for the support and maintenance "even of a hopelessly invalided son, whose only source of support has been for years the bounty of the testator, without being forced by law to pay his son's debts as the price of the right to provide for his necessities." Sheridan, 161 Va. at 880, 172 S.E. at 515. Hence, the legislative intent driving the en-

---

7. The relevant portion of section 55–19 reads as follows:

    B. Any trust estate not exceeding $500,000.00 in actual value may be held in trust upon condition that the trust corpus and income, or either of them, shall in the case of a simple trust or, in the case of a complex trust, may in the discretion of the fiduciary be paid or applied by the trustees for the benefit of the

beneficiaries without being subject to their liabilities or to alienation by them.

Va.Code Ann. § 55–19 (Michie Supp.1994).

8. Prior to the enactment of section 5157, a settlor could not create a trust whose terms insulated a beneficiary's interest from the claims of creditors. Hutchinson v. Maxwell, 100 Va. 169, 40 S.E. 655 (1902).

actment of section 5157 was "to permit property not exceeding $100,000 in actual value to be held in trust for the support and maintenance of a person without being subject to alienation by him or to his debts, where the creator of the trust so provides." *Id.*

In *Alderman v. Virginia Trust Co.*, 181 Va. 497, 513, 25 S.E.2d 333, 340 (1943), the Virginia Supreme Court commented that the spendthrift trust statute "permit[s] a donor, if he so wishes, to protect the estate he gives to his beneficiary from the latter's spendthrift tendencies...." These cases emphasize the purpose of the spendthrift statute as protection of the beneficiary's interest from the beneficiary's own improvident alienation. *See Sheridan*, 161 Va. at 880, 172 S.E. at 515; *Alderman*, 181 Va. at 513, 25 S.E.2d at 340. Such a purpose supports an interpretation that the $500,-000.00 spendthrift protection applies to each beneficiary's interest.

The fact that the cap was raised from $100,000.00 to $200,000.00 in 1958, and eventually to $500,000.00 in 1980, reflects the General Assembly's attempt to provide funds sufficient to fulfill the purposes behind enactment of the statute. In other words, as the cost of living increased, the trust corpus necessary to generate sufficient income to support a spendthrift beneficiary also increased. To hold that the $500,000.00 limit applies to the entire trust corpus ignores the entire reason for the General Assembly's periodic increases in the amount. The legislature cannot possibly envision how many beneficiaries may be named in any particular trust and, therefore, could not determine the amount of money necessary to provide for them. As the Virginia Supreme Court noted, the public policy of Virginia is to permit trust moneys to be held "for the support and maintenance of *a* person." *Sheridan*, 161 Va. at 880, 172 S.E. at 515 (emphasis added).[9]

A statutory interpretation which would place the $500,000.00 limit on the entire trust corpus, regardless of the number of beneficiaries, contradicts the public policy behind section 55–19. For example, if the cap applied to a trust with ten beneficiaries, each beneficiary would be entitled to the income from only $50,000.00, hardly enough to provide for the support and maintenance of each. In order to achieve the desired benefit, the settlor would be required to establish ten separate trusts, each with a corpus of $500,000.00. Such a result elevates form over substance.[10]

As articulated above, the legislative intent and public policy behind the statute indicate that the term "trust estate" should be defined as the estate of the beneficiary. For the foregoing reasons, the court AFFIRMS the bankruptcy court's finding that each beneficiary possessing a trust estate is afforded the entire $500,000.00 spendthrift protection.

### III. Conclusion

Because it was the trust settlors' intent that the spendthrift provisions would include *any* interest of a beneficiary, including an interest in the trust corpus, Debtor's contingent remainder interest is protected by the spendthrift provisions of the trust and is nontransferable. Hence, section 541(c)(2) of the Bankruptcy Code prevents its inclusion in the bankruptcy estate. The bankruptcy court's holding that the contingent remainder is property of the bankruptcy estate is REVERSED. However, a review of the language of section 55–19 of the Virginia Code and of the legislative intent and public policy behind its enactment leads this court to AFFIRM the bankruptcy court's holding that each beneficiary possessing a trust estate is

**9.** Although the General Assembly amended Virginia Code section 55–19 in 1989 by changing the language "to the support and maintenance of the beneficiaries" to "for the benefit of the beneficiaries," this change does not affect the court's decision regarding the interest to which the spendthrift protection applies. 1989 Va.Acts 600. Instead, this amendment expands the type of trust language that a settlor can use to obtain spendthrift protection.

**10.** The Bankruptcy Trustee also argues that the legislature, had it so desired, could have stated clearly that it intended $500,000.00 of each beneficiary's estate to be protected. The court does not find this argument persuasive. The fact that the statute is ambiguous does not mandate a finding *either* that the cap applies to the entire trust corpus *or* that it applies to each beneficiary's trust estate.

entitled to the entire $500,000.00 spendthrift protection.

IT IS SO ORDERED.