In re Timothy J. PEARSON and Dona T. Pearson, Debtors.

Donald F. KING, Trustee, Plaintiff,

v.

Kenneth M. THOMPSON, II, Trustee of the Kenneth M. Thompson Family Irrevocable Inter Vivos Trust, et al., Defendants.

Bankruptcy No. 92–14162–AB.

Adversary Nos. 95–1097, 95–01086, 95–1086.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Aug. 6, 1997.

---

Sally Hostetler, Odin, Feldman & Pittleman, P.C., Fairfax, VA, for Donald F. King, Chapter 7 Trustee.

Leslie W. Lickstein, Goodman, Gary & Lickstein, P.C., Vienna, VA, for Debtors, Timothy and Dona Pearson.

Richard C. Sullivan, Hazel & Thomas, P.C., Alexandria, VA, for the Kenneth M. Thompson Family Trust.

## MEMORANDUM OPINION
### (For Publication As Amended)

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

In this adversary proceeding, the Chapter 7 Trustee, Donald F. King, (hereinafter referred to as the Bankruptcy Trustee) seeks to compel turnover of the debtor's interest in a Family Trust from Kenneth M. Thompson, II, Trustee of the Family Trust. Both parties have moved for summary judgment. The parties agree that the Court may decide the issues of law on the agreed facts. After reviewing the briefs of the parties, hearing oral argument and having conducted independent research, we make the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I. *FACTS.*

The agreed facts are as follows. The debtor, Dona Pearson, is a primary beneficiary under the Kenneth M. Thompson Family Irrevocable Inter Vivos Trust established pursuant to an Irrevocable Inter Vivos Trust Agreement dated December 14, 1976 (hereinafter referred to as the "Trust"). The Trust was set up by the debtor's parents, Kenneth M. Thompson and Minnie D. Thompson. The debtor's parents are still living. There are two other beneficiaries under the Trust, Dana Thompson Dunn and Kenneth M. Thompson, II, the debtor's sister and brother. The debtor's brother, Kenneth M. Thompson, II is the Trustee of the Trust.

The debtor was born on June 30, 1954 and is 43 years old today. The Family Trust was established to provide the following benefits for the Beneficiaries:

(1) medical care and attention, (2) assistance for education pursuits, and (3) support and maintenance in such amounts and to such an extent not provided or furnished to the Primary Beneficiaries by either their parents or themselves, so as to pre-

serve the standard of living to which they have become accustomed.

Art. 2, section E, page 3 of the Trust.

Article Seven of the Trust Agreement contains the spendthrift provisions and states:

> It is the purpose and intent of the Grantors in the creation of this Trust Estate for the Primary Beneficiaries to provide for their needs and those of their issue during their minority.
>
> Therefore, in no event shall any portion of the whole or any portion of the Trust Estate, become liable for any debt or obligation whatsoever of any beneficiary regardless of whether the beneficiary contracting or otherwise incurring such obligation shall have been of legal age or not at that time. Furthermore, in no event shall any or all of the beneficiaries have the right and/or power in any manner whatsoever, whether by sale, assignment, mortgage, pledge or otherwise, to alienate or subject the whole or any portion of the Trust Estate to be used in payment of, or as a security for, any personal debt or obligation whatsoever incurred by any beneficiary; and the Trustee is hereby expressly directed and limited to pay all or any portion of the Trust Estate to or for the use of the person or persons hereinbefore mentioned and designated as the property beneficiaries of the Trust and for whose use and benefit this Trust Estate has been created, but in no event shall the Trustee pay the same to any other person or persons whomsoever.

Article 2, Section F(2) of the Trust Agreement provides that when the debtor attains twenty-five years of age, she shall have the right to distribution of "¼ of the Trust Estate Share allocated to [her] and held at that time." The debtor attained the age of twenty-five on June 30, 1979. Article 2, Section F(3) of the Trust Agreement provides that when the debtor attains thirty years of age, she shall have the right to distribution of "⅓ of the Trust Estate Share allocated to [her] and held at that time." The debtor attained the age of thirty on June 30, 1984. Article 2, section F(4) of the Trust Agreement provides that when the debtor attains thirty-five years

of age, she shall have the right to distribution of "½ of the Trust Estate Share allocated to [her] and held at that time." The debtor attained the age of thirty-five on June 30, 1989. Finally, Article 2, section F(5) of the Trust Agreement provides that when the youngest of the beneficiaries "attains forty (40) years of age, each Primary Beneficiary shall have the right to withdraw, upon his or her written request the remaining balance of the Trust Estate share allocated to such Primary Beneficiary and held at that time." The youngest Primary Beneficiary will attain the age of forty on July 23, 1997.

Subsection six of Article Two gives the Trustee of the Trust 5 years to make a distribution under Article Two sections F(2) through F(5):

> It is further provided, however, that if the Trustee, *in his sole and absolute discretion,* deems any of such partial distributions described in subparagraphs (2), (3), (4) and (5) of paragraph F of the ARTICLE TWO to be inappropriate, he may retain and delay the withdrawal of all or any portion of such aforedescribed distributions of the Trust Estate shares for a period not to exceed five (5) years. Before the expiration of any of the five (5) year periods described in subparagraphs (2), (3), (4) and (5) of paragraph F of this ARTICLE TWO, the Trustee may transfer, convey and pay over any part of a distributive portion of a share previously retained by him, as he, *in his sole and absolute discretion,* deems best; provided, however, that upon the expiration of each such five (5) year period, he shall then transfer, convey and pay over to the Primary Beneficiary any portion of his or her distributive share of the Trust Estate retained and delayed and not previously paid over to such Primary Beneficiary, in fee simple and absolutely.

The Trust Agreement also provides that when the youngest of the beneficiaries attains forty years of age, each primary beneficiary shall have the right to withdraw, upon his or her written request the remaining balance of the Trust Estate Share allocated to such Primary Beneficiary and held at that

time. The youngest Primary Beneficiary will attain the age of forty on July 23, 1997.

On August 28, 1992, the debtor filed a voluntary petition for relief under Chapter 11 of the Code. On March 18, 1994, the debtor's Chapter 11 case was converted to a case under Chapter 7. On May 27, 1994, July 13, 1994 and September 15, 1994, the Trustee of the Trust made distributions to the debtor from the Trust totaling $91,333. No other distributions have been made to the debtor during the course of her bankruptcy, nor has the debtor made any requests for distributions. Since the final distribution to the debtor on September 15, 1994, distributions have been made from the Trust to the other beneficiaries of the Trust. The debtor's funds have been withheld pending the outcome of this litigation.

On March 28, 1995, the Trustee in bankruptcy filed a five-count complaint against both the Trustee of the Trust and the debtor seeking turnover of the debtor's interest in the Trust. On April 4, 1995, the Trustee of the Trust filed a complaint for declaratory judgment relating to the debtor's interest in the Trust. The respective complaints have been consolidated into one action now before the Court.

## II. CONCLUSIONS OF LAW.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Summary judgment is proper where there is no genuine dispute as to any material fact, and either moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v, Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Hinkleman v. Shell Oil Co.,* 962 F.2d 372, 375 (4th Cir.), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992).

■ The bankruptcy estate generally consists of all of the debtor's legal and equitable interest at the time the bankruptcy petition is filed. 11 U.S.C. § 541(a)(1). However, under section 541(c)(2), a debtor's beneficial interest in a trust is excluded from the estate if it is restricted from transfer under applicable nonbankruptcy law. 11 U.S.C. § 541(c)(2). Therefore, a debtor's beneficial interest in a spendthrift trust is excluded from the bankruptcy estate so long as the spendthrift provision is valid under nonbankruptcy law. *See McLean v. Central States, S.E. & S.W. Pension Areas Fund (In re McLean),* 762 F.2d 1204, 1206–07 (4th Cir.1985); *In re Hanes,* 162 B.R. 733, 738 (Bankr.E.D.Va.1994) (Bostetter, C.J.).

■ The Trust was established and is administered in Virginia. Virginia Code section 55-19 authorizes the creation of spendthrift trusts. Va.Code Ann. § 55-19 (Michie 1995). Section 55-19(B) permits a $500,000 trust estate to be held in trust upon the condition that the trust corpus and income not be subject to the beneficiaries' liabilities or to alienation by them. The language contained in Articles Two and Seven of the Trust Agreement, as set forth above, specifies an intent to protect both the income and the corpus of the Trust from alienation or the claims of creditors. Thus, we find that the Trust is a valid spendthrift trust under Virginia law.

■ Accordingly, under section 541(c)(2) of the Bankruptcy Code, the debtor's share of the Trust is not property of her bankruptcy estate to the extent permitted by Virginia law. Virginia law permits the debtor to hold $500,000 in a trust estate protected by the spendthrift provisions. Va.Code § 55-19; *see also In re Baydush,* 171 B.R. 953, 959 (E.D.Va.1994). It follows then, that the debtor's share of the Trust above the $500,000 statutory protection is property of the bankruptcy estate. *Cf. Neuton v. Danning (In re Neuton),* 922 F.2d 1379, 1383 (9th Cir.1990) (finding that spendthrift restriction under California law fully protects only 75% of the debtor's interest in trust; thus, the bankruptcy estate possesses an income interest in 25% of trust).

The Bankruptcy Trustee asserts the theory that he is entitled to turnover of 75% of the debtor's interest in the Trust, plus any value in the remaining 25% which exceeds the $500,000 protection. The Bankruptcy Trustee's position is that because the debtor had the right to request distribution of 75% of her share in the Trust on the petition date, that share lost its spendthrift protection and

should be included as property of the bankruptcy estate. We disagree.

On the petition date, the debtor had the right to request distribution of 75% of her share of the Trust. She was entitled to request ¼ of her Trust share on June 30, 1979, ⅛ of her Trust share on June 30, 1984 and ½ of her Trust share on June 30, 1989. The Trustee of the Trust had absolute discretion to withhold distribution for 5 years from the date the debtor was entitled to request distribution. Under the terms of the Trust Agreement, upon the expiration of the five year period, the Trustee's discretionary powers ceased and the debtor had the absolute right to distribution. Thus, on August 28, 1992, the petition date, 50% of the debtor's share of the Trust was available for distribution to her free of the Trustee's discretionary powers. The next 25% of the debtor's share was available to her at her request, however, distribution was subject to the Trustee's discretionary powers until June 30, 1994. Nevertheless, the debtor did not request distribution from the Trust at any time prior to filing bankruptcy.

The issue here is whether income that has accrued to the debtor but remains in the hands of the Trustee of the Trust is protected by the spendthrift provisions of the Trust. To make this determination, we look to the intention and purpose of the grantors. *In re Wilson*, 3 B.R. 439 (Bankr.W.D.Va.1980). The grantors' intent can be gleaned from the terms of the trust itself. Based on the language of the spendthrift provisions as stated previously, it is obvious that the grantors did not want their assets to end up in the hands of their children's creditors.

The Virginia Supreme Court has noted that "[n]o distinction is made by the legislature between the policy of protection of income and protection of corpus, nor does there seem to be any logical distinction between either, so long as the trust fund remains in the hands of the trustee subject to the provision of the trust instrument." *Alderman v. Virginia Trust Co.,* 181 Va. 497, 25 S.E.2d 333 (1943). Given the language of the Trust, we hold that the restraint on alienation of the right to receive the principal from the Trust is effective until the principal

is no longer in the hands of the Trustee. *Accord* 2A *Scott on Trusts* § 153 (4th ed.1989); *Domo v. McCarthy,* 66 Ohio St.3d 312, 612 N.E.2d 706 (Ohio 1993); *Dierschke v. Central National,* 876 S.W.2d 377 (Tex. App.-Austin 1994). We recognize that there is authority to the contrary, and decline to follow it. *See* 2A *Scott on Trusts* § 153 (citing cases). In this case, the debtor's entire interest in the Trust remained in the hands of the Trustee on the date she filed bankruptcy. Consequently, the debtor's entire interest was subject to the spendthrift provisions.

The finite issue then is what is the Bankruptcy Trustee entitled to recover? This is an unusual case because the debtor's interest in the Trust far exceeds the $500,000 spendthrift trust estate allowed under Virginia law. Thus, our analysis above appears to be purely academic. The fact that the debtor was unconditionally entitled to receive 50% of her interest in the Trust on the petition date is a distinction without a difference in this case because the Virginia Code only allows $500,-000 to be held in a spendthrift trust free from the reach of a debtor's creditors. Because the Bankruptcy Trust enjoys the power of a hypothetical judgment creditor, 11 U.S.C. § 541(a)(1), he is entitled to turnover of the actual value of the debtor's entire interest in the Trust as of the petition date that exceeds the $500,000 statutory exclusion. Although we find that the Trustee's discretionary powers would trump the rights of the Bankruptcy Trustee, such discretionary powers do not trump the mandate of the Virginia Legislature limiting the amount of money that may be held in a trust estate and remain protected by the spendthrift provision to $500,000.

The Bankruptcy Trustee also requests turnover of the post-petition distributions made to the debtor. Because we find that the trust estate was not property of the estate to the extent of $500,000, the Bankruptcy Trustee has no interest in post-petition distributions made to the debtor within the statutory limit. However, the post-petition distributions made to the debtor shall be deducted from her $500,000 statutory exclusion.

### III. *CONCLUSION.*

For the foregoing reasons, we hold that the Trust is a valid spendthrift trust under Virginia law. Under section 541(c)(2) of the Bankruptcy Code, the debtors interest in the Trust is not property of the bankruptcy estate to the extent permitted under Virginia law. Virginia law permits the debtor to hold $500,000 in actual value in a spendthrift trust. Therefore, $500,000 of the debtor's share of the Trust is excluded from the bankruptcy estate. The Trustee of the Trust shall turnover to the Bankruptcy Trustee the actual value of her interest in the Trust as of the petition date above the $500,000 spendthrift limit. The Trustee of the Trust is directed to provide an accounting to the Bankruptcy Trustee of the value of the Trust as of the petition date. The Bankruptcy Trustee is not entitled to recovery of post-petition distributions made to the debtor within the statutory limit. Should the parties be unable to agree as to the value of the debtor's interest in the Trust, the Court will hear and determine that issue.